NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1762
_____

NEWCOMB MARK ALEXANDER MILLER,
a/k/a Mark Miller, a/k/a Gary Williams,
a/k/a Warren Miller, a/k/a Aubrey Tullock,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A027-040-791
(U.S. Immigration Judge: Honorable Mirlande Tadal)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 12, 2010
Before: SCIRICA, JORDAN and VANASKIE, Circuit Judges.

(Filed: October 15, 2010)
_____

OPINION OF THE COURT
_____

PER CURIAM.

Newcomb Mark Alexander Miller, proceeding pro se, seeks review of the Board of

Immigration Appeals' ("BIA" or "Board") final order of removal. In its order, the BIA

affirmed the Immigration Judge's ("IJ") decision to deny Miller's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We will deny the petition.

Miller, a native and citizen of Jamaica, was admitted to the United States in January 1982 as a non-immigrant B-2 visitor. Miller became a lawful permanent resident in April 1984. In April 2004, he was convicted in the United States District Court for the District of Virginia of distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1). Miller was sentenced to 135 months of imprisonment.

Based on his criminal conviction, the United States Department of Homeland Security initiated removal proceedings against Miller by filing a Notice to Appear, charging him with removability under INA § 237(a)(2)(iii) for having been convicted of an aggravated felony as defined in INA § 101(a)(43)(B), and pursuant to INA § 237(a)(2)(B)(i) for having been convicted of a controlled substances violation as defined in section 102 of the Controlled Substances Act, 21 U.S.C. § 801 et seq.

Following his administrative hearing, the IJ found Miller removable as charged based on his conviction and therefore ineligible for asylum and withholding of removal.[1] See INA §§ 208(b)(2)(A)(ii) and 241(b)(3). The IJ also concluded that although Miller had testified credibly, he had not met his burden of proving that he would more likely

---

[1] We note that Miller proceeded pro se throughout the course of his administrative proceedings.

2

than not be tortured by or with the consent or acquiescence of public officials in Jamaica.[2]

Miller filed a timely appeal with the BIA and, on February 19, 2010, the Board issued an order dismissing the appeal and affirming the IJ's application for deferral of removal under the CAT. The Board noted in its decision that Miller had not challenged his conviction on appeal, which rendered him ineligible for asylum and withholding of removal. This petition for review followed.

This Court has authority to review final orders of removal. See 8 U.S.C. § 1252(a).[3] "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). The BIA's factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Miller argues in his petition for review that he did not receive a full and fair hearing before the IJ, in violation of his due process rights. Specifically, he asserts that

---

[2]Miller claimed that he would likely be tortured because he is the son of a former Jamaican police detective.

[3]We note that section 242(a)(2)(C) of the INA precludes review of removal orders entered against criminal aliens, like Miller, who have been found removable based on a conviction for a controlled substance violation or an aggravated felony. However, Miller argues that the agency violated his due process rights, which raises a constitutional question over which we may exercise jurisdiction. See INA § 242(a)(2)(D); Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005).

3

the agency: 1) improperly conducted the proceedings via video teleconference; 2) failed to comply with the procedures set forth in 8 C.F.R. § 1240.10; 3) improperly denied him a continuance after he informed the IJ that he did not receive notice that his hearing date had been rescheduled; and 4) failed to afford him an opportunity to present his claims because the transcript indicates that portions of his testimony were indiscernible.

Although we have held that there is no constitutional right to asylum, aliens facing removal are entitled to due process. See Sewak v. INS, 900 F.2d 667, 671 (3d Cir. 1990). In this context, the Due Process Clause entitles an alien to "a full and fair hearing and a reasonable opportunity to present evidence." Romanishyn v. Att'y Gen., 455 F.3d 175, 185 (3d Cir. 2006). To prevail on a due process claim, an alien must show substantial prejudice. Id.

Miller's argument that the agency violated his right to a fair hearing by conducting the hearing via video teleconference is without merit. As the government correctly states, the statute governing Miller's hearing, 8 U.S.C. § 1229a, specifically authorizes proceeding by means of a video teleconference. See 8 U.S.C. § 1229a(b)(2)(A)(iii). Miller cites no precedent stating the utilization of video teleconferencing violates due process. We note, however, that the Fourth Circuit has held that video conferencing might result in prejudice where it impedes an IJ's ability to assess credibility or the format otherwise restricts an alien's ability to present his or her case. See Rusu v. INS, 296 F.3d 316, 322-24 (4th Cir. 2002). Here, the IJ assumed that Miller's testimony was true, but

4

determined that he was legally ineligible for asylum or withholding of removal and that he had failed to show a likelihood of torture. After reviewing the record, we conclude that Miller has not demonstrated that the use of video teleconferencing prevented the IJ from properly considering the record or testimony so as to have deprived him of a reasonable opportunity to be heard. Moreover, Miller presents no basis upon which we might conclude that the IJ would have ruled differently had he appeared in person.

Next, Miller argues that the IJ failed to comply with the hearing requirements of 8 C.F.R. § 1240.10[4] when, during the September 22nd merits hearing, she failed to ask him if he was represented by counsel or advise him of the availability of pro bono legal services. The argument is meritless. At an earlier hearing, in January 2008, the IJ specifically told Miller, "You should have received a list of legal counsel, Mr. Miller. It's a list of attorneys and legal advisors who may be able to represent you at little or no cost." (See Administrative Record ("A.R.") at 91.) The IJ then asked him if he had received a copy of the list. (Id.) Miller replied that he thought he had received one, but was provided with another copy. (Id.) Thereafter, at various other hearings, Miller was repeatedly asked if he wished to continue pro se and he answered in the affirmative.

---

[4]Pursuant to 8 C.F.R. § 1240.10(a)(2) and (3), "[i]n a removal proceeding, the immigration judge shall . . . [a]dvise the respondent of the availability of free legal services provided by organizations and attorneys . . . located in the district where the removal hearing is being held" and shall "[a]scertain that the respondent has received a list of such programs[.]"

5

(Id. at 135, 159, 162.) Obviously, the facts in this case are distinguishable from those in Leslie v. Att'y Gen., 611 F. 3d 171, 182-83 (3d Cir. 2010), where, in that case, the IJ failed to advise the alien of the availability of free legal services and neglected to confirm his receipt of the list of available programs. Here, the record amply demonstrates that the IJ complied with the requirements of 8 C.F.R. § 1240.10(a) and (b).[5]

Miller's third claim also lacks merit. He argues that the IJ violated his due process rights when she denied his request for a continuance after he informed her at the beginning of the hearing that he had not learned of the change in his hearing date until the night before. Originally, Miller's merits hearing was scheduled for November 24, 2009. On August 11, 2009, the Immigration Court issued a notice of hearing, rescheduling it to September 22, 2009. As an initial matter, the rescheduling notice was mailed to the same address where Miller had received prior correspondence. More importantly, we note that prior to his September hearing 22nd hearing, Miller had asked for, and been granted, numerous continuances. Obviously sensitive to his pro se status, as mentioned, the IJ previously granted a continuance so that Miller could seek counsel. (A.R. at 81-94.) Miller was also granted two months-long continuances to procure evidence that his parents had been naturalized and also to apply for CAT relief. (Id. at 122, 149.) He was

_____

[5]We note that Miller also alleges that the IJ did not have jurisdiction to preside over his case because she was sitting in Elizabeth, New Jersey and he was in custody in York, Pennsylvania. (See Pet. Br. at 5.) However, Miller cites no authority, nor are we aware of any, supporting this assertion. Moreover, the claim does not present a valid due process argument.

also granted five additional adjournments so that he could perfect his application and obtain supporting evidence.  (Id. at 156, 167, 162, 171, 175.)

Miller claims that because the IJ refused to grant him a continuance at the September 22nd hearing, he was unable to present an affidavit from his father.  However, he does not explain how his father's affidavit would have demonstrated his likely torture by public officials in Jamaica as he has not indicated in his brief what the affidavit might have stated.[6]  Therefore, even if the IJ erred by not continuing the hearing, by Miller's own admission, see Pet. Br. at 8, the only harm that he suffered was his inability to present the affidavit.  Because he offers no insight into its likely contents, we are unable to conclude that it would have supported his claim for relief.  See Khan v. Att'y Gen., 448 F.3d 226, 235-36 (3d Cir. 2006).

Lastly, Miller argues that he was prejudiced from the omission of indiscernible or inaudible words or phrases in the hearing transcript.  An alien is entitled to administrative review of the IJ's decision, which demands a reasonably accurate and complete transcript to allow for meaningful and adequate appellate review.  See Teng v. Mukasey, 516 F.3d 12, 18 (1st Cir. 2008) (citations omitted).  However, a petitioner must demonstrate that a more complete or accurate transcription "'would likely have made a dispositive difference in the outcome of the proceeding.'"  Id. at 17-18 (quoting Harutyunyan v. Gonzales, 421

---

[6]Moreover, as noted, Miller had over six months since his case was last continued to obtain additional evidence, including an affidavit from his father.

F.3d 64, 70 (1st Cir. 2005)); <u>Garza-Moreno v. Gonzales</u>, 489 F.3d 239, 241-42 (6th Cir. 2007) (petitioner furnished with inaccurate or incomplete transcript must show that complete and accurate transcript would have changed the outcome of the case) (citation omitted). Miller does not identify a single incident of indiscernible or inaudible testimony in the transcript that might have established his eligibility for CAT protection. Accordingly, because Miller has not demonstrated prejudice, his due process claim must fail.

Having concluded that Miller was given adequate opportunity to present his case, we agree with the BIA that he was unable to identify any record evidence compelling a finding that it is more likely than not that he will be tortured if returned to Jamaica by or with the acquiescence of public officials. <u>See</u> <u>Sevoian v. Ashcroft</u>, 290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)). Accordingly, we will deny the petition for review.