**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0357n.06

No. 09-4278

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 25, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **KATHRYN ELIZABETH CLARK,** | ) | **ON PETITION FOR REVIEW** |
| | ) | **OF AN ORDER OF THE** |
| *Petitioner-Appellant,* | ) | **BOARD OF IMMIGRATION** |
| | ) | **APPEALS** |
| v. | ) | |
| | ) | **O P I N I O N** |
| **ERIC H. HOLDER, JR.,** Attorney General | ) | |
| | ) | |
| *Respondent-Appellee.* | ) | |

BEFORE:    COLE, MCKEAGUE, and GRIFFIN, Circuit Judges.

**COLE, Circuit Judge.** Kathryn Elizabeth Clark petitions this Court for review of a decision of the Board of Immigration Appeals ("BIA") which dismissed Clark's challenge to an order of the Immigration Judge ("IJ") denying Clark cancellation of removal under section 240A(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b). The BIA also denied Clark's claim that her due process rights were violated by malfunctions in the video conferencing equipment used to conduct her cancellation of removal hearing and errors in the hearing transcript attributable to that equipment. We **DISMISS** in part and **DENY** the petition for review.

**I.**

Clark, a citizen of the United Kingdom, entered the United States on June 24, 1990, and on December third of that year married an American citizen named Seth Worden, with whom she had formed a relationship sometime during the 1980's while both were working in Saudi Arabia. A few

months after they married Worden filed an I-130 Petition for Alien Relative and an application for permanent residence on Clark's behalf. Three years later the Immigration and Naturalization Service ("INS") denied the application after finding that the marriage was fraudulent. Worden never appealed the INS's decision and he and Clark subsequently divorced.

On August 12, 1995 Clark married David Clark, an American citizen. David Clark filed an I-130 petition on his wife's behalf, but it too was denied, this time because the *prior* petition was denied and never appealed. Clark continued to reside in the United States with her then-husband; they had three children together, all of whom are American citizens. On December 8, 2005, the Department of Homeland Security charged Clark with being removable for lack of any legal status entitling her to remain in the United States. Clark conceded removability before an IJ, but applied for cancellation of removal, which provides relief from deportation at the discretion of the Attorney General, where a petitioner establishes ten years of continuous physical presence in the United States immediately preceding the application; a lack of convictions for certain serious criminal offenses; good moral character; and that removal would result in exceptional and extremely unusual hardship to the movant's American citizen spouse, parent or child. *See* INA 240A(b), 8 U.S.C. § 1229b(b). On November 4, 2008, Clark appeared with counsel at her cancellation of removal hearing, which was conducted via videoconference. In addition to Clark, four other witnesses testified at the hearing: a child psychologist, David Clark, who divorced the petitioner in 2008, along with John Martin and Karen Tyson, friends of Clark.

After the hearing, the IJ issued a twelve-page written opinion holding Clark ineligible for cancellation of removal for failing to demonstrate that her citizen children would suffer exceptional

and extremely unusual hardship on her deportation to the United Kingdom; she was found eligible for relief in all other respects. Clark appealed the decision to the BIA and brought a collateral claim urging that problems with the video equipment at the hearing coupled with 418 indications in the hundred-page hearing transcript that testimony was indiscernible, denied her due process of law under the Fifth Amendment to the United States Constitution. The BIA affirmed the IJ in all respects and rejected Clark's due process claim. This petition for review followed.

**II.**

Clark challenges the decision of the BIA denying her cancellation of removal, and renews her due process claim that equipment problems at her cancellation hearing, and transcription errors resulting from them, denied her due process of law.

We must dismiss Clark's claim that the BIA abused its discretion in upholding the IJ's determination that she had failed to establish that her deportation would result in exceptional and extremely unusual hardship to her three citizen children, because we lack jurisdiction to review this discretionary predicate to a grant of cancellation of removal. *See Garza-Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007); *Hermez v. Gonzales*, 227 F. App'x 441, n.1. (6th Cir. 2007) (no jurisdiction to review "discretionary exceptional and extremely unusual hardship decision") (internal quotation marks omitted).

Clark's challenge to the constitutional adequacy of her cancellation of removal hearing is properly before us but, nevertheless, is unavailing. We review de novo allegations that a removal hearing denied a petitioner due process of law. *See Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005). A removal proceeding violates the Fifth Amendment where a defect in the hearing is such

that it "might have led to a denial of justice." *Id*. To meet this standard Clark must point to a defect in her cancellation of removal hearing and show that she was prejudiced by it. *Id.*

Clark contends that her hearing was deficient because technical difficulties with the video conferencing equipment resulted in numerous interruptions and ultimately produced a transcript containing 418 separate notations that recorded testimony was indiscernible to the transcriber. We reject the former argument because Clark has made no effort to specify how the breaks in the hearing prejudiced her. While interruptions in testimony are less than ideal, they happen routinely and for myriad reasons in a variety of legal proceedings. Absent any explication why these interruptions led to a denial of justice in this instance, we cannot agree with Clark that these pauses were "flagrantly prejudicial." (Pet'r's Br. 21.)

The transcription errors are more nettlesome. "Due process demands a reasonably accurate and complete transcript to allow for meaningful appellate review." *Garza-Moreno*, 489 F.3d at 241 (quoting *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006)). In *Garza-Moreno* we found troubling a mere 67 failures of transcription; the *418* that litter Clark's transcript are all the more so. *Id.* (denying due process claim). But "a . . . failure of transcription, by itself, does not rise to a due process violation." *Id.* (quoting *Kheireddine v. Gonzalez*, 427 F.3d 80, 85 (1st Cir. 2005)). Clark still must show that the errors prejudiced her and, more precisely, how an absence of errors in the transcript "would have changed the outcome of [her] case." *Id.* at 242 (quoting *Ortiz-Salas v. INS*, 992 F.2d 105, 106 (7th Cir. 1993)). All she offers in this regard is that the transcription errors made it "impossible to prepare an accurate appeal." (Pet'r's Br. 25.) A barrier to appellate advocacy, however, does not axiomatically dictate that justice was denied in a particular case. And Clark has

not shown how the gaps in the transcript hamper our review or otherwise led to an injustice in her case.

Nor has Clark challenged any aspect of the IJ's extensive written summary of the testimony presented at her hearing. That is, Clark has in effect conceded that the IJ's understanding of her evidentiary proffer was correct and, accordingly, that the BIA reviewed an accurate version of that proffer in rendering its decision. Whatever the errors in transcription, then, Clark admits that her case and arguments were heard and considered by the IJ and the BIA. On such a record we cannot find that Clark was accorded less process than the Constitution demands.

**III.**

For the reasons above, we **DISMISS** in part and **DENY** the petition for review.